**VENCOR, INC., Vencor Hospitals
East, Inc., et al., Plaintiffs,**

v.

**Donna E. SHALALA, Secretary, United
States Department of Health and
Human Services, Defendant.**

Civil Action No. 1:97-CV-0943-TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 23, 1997.

Glenn Paul Hendrix, Teresa Norwood McNally, James Richard Westbury, Arnall Golden & Gregory, Atlanta, GA, for Hahnemann Hosp. and Vencor Hospitals.

Eve H. Goldstein, Elizabeth C. Benton, Lori M. Beranek, Bruce R. Granger, U.S. Dept. of Health & Human Services, Office of General Counsel, Atlanta, GA, for Donna E. Shalala.

*ORDER*

THRASH, District Judge.

This matter is before the Court on the (1) Defendant's Motion for Summary Judgment [Doc. No. 12]; and (2) the Plaintiffs' Cross–Motion for Summary Judgment [Doc. No. 13].

## I. BACKGROUND

Medicare is a system of federally-funded health insurance for the aged and the disabled. The program comes under the direction and auspices of Defendant Donna E. Shalala in her official capacity as the Secretary of the United States Department of Health and Human Services. The program is administered by (1) the Health Care Financing Administration's ("HCFA") national office in Baltimore; (2) ten regional HCFA offices, including Region VI headquartered in Atlanta; and (3) numerous fiscal "intermediaries" or contractors with which the HCFA contracts for administrative services. Rules, directions and instructions may be issued at each level of administration.

The Plaintiffs specialize in the provision of ventilator and respirator care both to hospital inpatients and residents of skilled nursing facilities ("SNF"). Under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, as amended ("Medicare Act"), a SNF may receive Medicare reimbursement for care provided to their patients under certain conditions. One of the reimbursable services is respiratory therapy. A SNF may provide this service through its own employees or through employees of a hospital with which it has a "transfer agreement." 42 U.S.C. § 1395x(h)(6); 42 C.F.R. § 409.27. The requirements for a transfer agreement are set forth in 42 U.S.C. § 1395x(*l*). That provision was enacted in 1965 as part of the original Medicare Act and has never been amended substantively. *Cf.* 42 U.S.C. § 1395x(*l*) and § 1861(*l*) of Social Security Amendments Act of 1965, Pub.L. 89–97, *reprinted in* 1965 U.S.C.C.A.N. 305, 342 (1965).

Section 1395x(*l*) is written in two distinct paragraphs. The first paragraph governs circumstances where there is a written transfer agreement:

A hospital and a skilled nursing facility shall be considered to have a transfer agreement in effect if, by reason of a written transfer agreement between them ... there is reasonable assurance that

   (1) transfer of patients will be effected between the hospital and the skilled nursing facility whenever such transfer is medically appropriate as determined by the attending physician; and

   (2) there will be interchange of medical and other information necessary or useful in the care and treatment of individuals transferred between the institutions, or in determining whether such individuals can be adequately cared for otherwise than in either of such institutions.

42 U.S.C. § 1395x(*l*). The second paragraph governs circumstances in which there is no written transfer agreement:

Any skilled nursing facility which does not have such an agreement in effect, but which is found by a State agency ... to have attempted in good faith to enter into such an agreement with a hospital sufficiently close to the facility to make feasible the transfer between them of patients and the information referred to in paragraph (2), shall be considered to have an agreement in effect if and for how long as such agency ... finds that to do so is in the public interest and essential to assuring extended care services for persons in the community who are eligible for payments with respect to such services under this subchapter.

*Id.*

Since 1967, the HCFA has maintained formal regulations that implement the statutory requirements for transfer agreements. In 1967, HCFA promulgated regulations, adopted through a notice-and-comment process, codified at 42 C.F.R. § 405.1133(a)(1), that required in part that a SNF's transfer agreement be "with a hospital close enough to the facility to make the transfer of patients feasible." The transfer regulation was amended in 1974 pursuant to a notice-and-comment process. The amended regulation did not include language that the parties to a transfer agreement be in close geographic proximity. Since 1974, the transfer regula-

tion, now codified at 42 C.F.R. § 483.75(n) and last amended in 1991, is consistent with the statutory language of § 1395x(*l*). *See* 42 C.F.R. § 483.75(n).

On July 19, 1995, the HCFA Regional Administrative Office for Region IV issued a memorandum to "All Intermediaries." (Doc. No. 3, Exh. 21, Watson Aff., Exh. A). The memorandum states:

Some [SNFs] and hospitals are entering into "transfer agreements" for the sole purpose of obtaining coverage of respiratory services. Many of these agreements are not valid because the hospital and [SNFs] are not close enough to make transfer of patients feasible.

(*Id.*). The memorandum requires that intermediaries notify:

all hospitals and [SNFs] through your provider bulletins and workshops that these invalid transfer agreements are not recognized and that respirator therapy furnished by a SNF under arrangement with a hospital in this situation is not covered under Medicare. Also remind SNFs that they are not required to inform patients of any charges for noncovered services at the time of admission (see 42 C.F.R. § 483.10(b)(6)).

(*Id.*). The July 19 Memorandum ostensibly relies upon 42 C.F.R. § 483.75(n), and states that:

[t]his section of the regulations indicates that transfer agreements must reasonably assure that patients will be transferred and assured of timely admission when transfer is medically appropriate. It also indicates that the hospital should he sufficiently close to the [SNF] to make transfer feasible. Unless a transfer agreement meets these requirements, it is not valid for coverage purposes.

(*Id.*).

Medical intermediaries have enforced the geographic-proximity requirement contained in the July 19 Memorandum, not only in Region IV, but also in other HCFA regions. In a letter dated August 9, 1995, HCFA Regional IV specifically addressed a transfer agreement between one of the Plaintiffs' competitors, Tanner Medical Center ("Tan-

ner"), and its client SNFs. (Doc. No. 3, Exh. 21, Watson Aff., Exh. B). HCFA stated in the August 9, 1995, letter that "[w]here a [SNF] is located many miles from the hospital and where there are a number of equally qualified hospitals closer to the [SNF], a transfer agreement between the two would be valid only under very unusual circumstances." (*Id.*). Following July 19, 1995, numerous SNFs have either canceled their transfer agreements with the Plaintiffs, threatened to cancel their transfer agreements, or declined to enter into such agreements.

On April 9, 1997, the Plaintiffs filed this Complaint for Declaratory and Injunctive Relief against the Defendant. They seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 (1988), the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.* (1988), and Title XVIII of the Social Security Act, 42 U.S.C. § 1395x(*l*) (1993), as amended. Specifically, the Plaintiffs seek to declare invalid as a matter of law the directive stated in the July 19 Memorandum. In the complaint, the Plaintiffs assert that the July 19 Memorandum improperly imposes a new geographic-proximity requirement for Medicare reimbursement for respiratory services performed under a transfer agreement between a hospital and the SNF and that such requirement is contrary to the language of the underlying Medicare statute, 42 U.S.C. § 1395x(*l*) and the accompanying regulations promulgated at 42 C.F.R. § 483.75(n). They further assert that the new requirement is contrary to HCFA's settled practice in enforcing the Medicare statute; is being applied retroactively and in an arbitrary and capricious manner; was adopted without a proper notice-and-comment process; and is unconstitutionally vague. The Plaintiffs seek an injunction permanently enjoining the Defendant from enforcing the July 19 Memorandum.

The Defendant filed a Motion to Dismiss, or Alternatively, for Summary Judgment. By Order dated September 12, 1997, the Court denied the Motion to Dismiss but reserved ruling on the Summary Judgment motion. In the Summary Judgment motion, the Defendant contends that the geographic-proximity requirement contained in the July 19 Memorandum is fully consistent with the statutory language of § 1395x(*l*) and that the memorandum constitutes a permissible interpretation of the statute and implementing regulation. Thus, the Defendant contends that the geographic-proximity requirement in the July 19 Memorandum does not constitute improper rule-making; has not been applied retroactively and in an arbitrary and capricious manner; and is not unconstitutionally vague. In their Cross–Motion for Summary Judgment, the Plaintiffs contend that the geographic-proximity requirement in the July 19 Memorandum is contrary to 1395x(*l*), the implementing regulation, and HCFA's settled practice in enforcing the Medicare statute; is being applied retroactively and in an arbitrary and capricious manner; was adopted without a proper notice-and-comment process, and is unconstitutionally vague.

## II. SUMMARY JUDGMENT STANDARDS

■ Summary judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The evidence and any inferences that may be drawn should be viewed in the light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987). The party seeking summary judgment must first identify grounds that demonstrate the absence of a genuine issue of a initial fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Mere denials or allegations by the nonmovant in the form of legal conclusions and unsupported by any specific facts have no probative value and are therefore insufficient to create issues of material fact that would preclude summary

judgment. *Broadway v. City of Montgomery*, 530 F.2d 657, 660 (5th Cir.1976).

## III. DISCUSSION

■ Under 42 U.S.C. § 1395oo(f)(1), the standard for judicial review of the Defendant's actions is governed by 5 U.S.C. § 706. This section of the APA requires a reviewing court to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or not in accordance with law." 5 U.S.C. § 706(2)(A). While considerable weight should be given to an agency interpreting matters over which the agency is charged to administer, a reviewing court must not abdicate its responsibility to review " 'an agency's construction that is alleged to be inconsistent with the statutory mandate.' " *Sarasota v. Memorial Hosp. v. Shalala*, 60 F.3d 1507, 1511 (11th Cir.1995) (quoting *Medical Center Hospital v. Bowen*, 839 F.2d 1504, 1510 (11th Cir.1988)).

■ The APA requires all federal agencies to publish proposed rules in the Federal Register in order to provide the public with notice and an opportunity to comment. 5 U.S.C. § 553(b), (c). The statute exempts interpretive rules and general statements of policy from the notice-and-comment requirements. 5 U.S.C. § 553(b)(A). It is settled that an agency may not adopt rules that reverse or depart radically from its own prior longstanding policy without invoking the notice-and-comment process. *See Jean v. Nelson*, 711 F.2d 1455, 1476 (11th Cir.1983) (finding that "the far-reaching policy announced by the government in this case, reversing the long-standing old policy and instituting the new policy 'is clearly a rule' "), *reh'g en banc granted*, 714 F.2d 96 (11th Cir.1983), *vacated*, 727 F.2d 957 (11th Cir. 1984) (dismissing appeal on APA issue as moot since government had issued new regulations in accordance with APA rule-making requirements); *American Trucking Association, Inc. v. United States*, 688 F.2d 1337, 1348 (11th Cir.1982) (stating that "the decision to reverse a longstanding and uniform practice by revoking all outstanding authorities of a particular type and implicitly indicating that no such authorities will be issued in the future is clearly a rule"), *cert. granted*, 462 U.S. 1130, 103 S.Ct. 3109, 77 L.Ed.2d 1365 (1983), *rev'd on other grounds*, 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984).

■ The July 19 Memorandum states that transfer agreements between hospitals and SNFs for respiratory services are not valid if the hospital and SNF are not close enough to make the transfer of patients feasible. Further, an HCFA letter dated August 9, 1995, addressing a particular transfer agreement stated that "[w]here a [SNF] is located many miles from the hospital and where there are a number of equally qualified hospitals closer to the [SNF], a transfer agreement between the two would be valid only under very unusual circumstances." The Court finds that the July 19 Memorandum, therefore, imposes a geographic-proximity requirement for the validity of transfer agreements in the context of respiratory services.

The Medicare Act has no geographic proximity requirement where there is a written transfer agreement between a hospital and a SNF. The first paragraph of § 1395x(*l*) addressing situations where a written transfer agreement exists between a hospital and SNF has no requirement concerning the geographic proximity of the SNF to the hospital. *See* 42 U.S.C. § 1395x(*l*). Only the paragraph applicable to situations where there is no written transfer agreement in effect does the statute require the hospital to be sufficiently close to the SNF. *Id.* The applicable regulations implementing the statute support the conclusion that the statute imposes no such geographic-proximity requirement. In 1967, HCFA promulgated regulations, adopted through a notice-and-comment process and formerly codified at 42 C.F.R. § 405.1133(a)(1), that required in part that a SNF's transfer agreement be "with a hospital close enough to the facility to make the transfer of patients feasible." However, that regulation was amended in 1974 pursuant to a notice-and-comment process and did not include language that the parties to a transfer agreement be close to each other. Since 1974, the regulation has not mandated proximity between the parties to a transfer agreement. The language of the current regulation, last amended in 1991, is consistent with and tracks the statutory language of § 1395x(*l*). *See* 42 C.F.R. § 483.75(n).

Contrary to the Defendant's contention, it is clear that the statute and accompanying regulations did not intend a geographic-proximity requirement where a written transfer agreement was in place between the hospital and a SNF.

■ It is undisputed that the HCFA did not implement the notice-and-comment process before promulgating the geographic-proximity requirement in the July 19 Memorandum. The Defendant contends that such procedures were unnecessary because the July 19 Memorandum constitutes interpretive rule-making that is exempt from the formal notice-and-comment process. However, the undisputed evidence presented before the Court indicates that (1) SNFs have been obtaining respiratory therapy from non-local hospitals since shortly after the inception of the Medicare program; and (2) in the 30 years before July, 1995, the Medicare program had never denied a reimbursement claim based solely on the distance between institutions. For example, in a letter dated August 13, 1992, Blue Cross and Blue Shield of Texas, a major intermediary, stated that it was not aware of any specifically-stated distance requirements in the statute or regulations that would affect a transfer agreement (Doc. No. 3, Exh. 24, Northup Aff., Exh. E). Other intermediaries have similarly indicated that they were not aware of any distance limitations for a transfer agreement to be valid. (*See id.*, Exhs. B, C, and D).

The Defendant also argues that the July 19 Memorandum merely states the same rule that had already been set forth in an April, 1993, letter from Thomas Hoyer, a senior HCFA official. (Defendant's Exh. 6). However, the Hoyer letter expressly acknowledges that no federal statute or rule prohibits a transfer agreement between a hospital and SNF based solely on the distance between them. (*Id.*). Further, the undisputed evidence indicates that Medicare intermediaries continued to pay for respiratory services without regard to the distance between the SNF and the hospital. The Defendant has failed to submit any evidence indicating that these intermediaries were ever instructed by the HCFA before July 19, 1995, that written transfer agreements were subjected to a geographic-proximity requirement.

The Defendant acknowledges that it has enforced the geographic-proximity requirement following the issuance of the July 19 Memorandum. For example, the audit experience of a Texas SNF, Northgate Manor, demonstrates the before-and-after effect of the memorandum. (Doc. No. 3, Exh. 26, Kiklis Aff., Exh. A). The Medicare intermediary initially allowed the reimbursement under a transfer agreement in July, 1995, but reversed course in September, 1995. The intermediary issued a revised audit report disallowing the reimbursement because the distance between the hospital and the SNF is about 300 miles and that it had just learned from the HCFA that it considered a transfer of patients unfeasible under that circumstance. (*Id.*).

■ The Court concludes that the July 19 Memorandum and other directives of the Defendant incorporating the geographic-proximity requirements are contrary to the plain language of the underlying statute, 42 U.S.C. § 1395x(*l*), and the accompanying regulation, 42 C.F.R. § 483.759(n). The Court further concludes that the Defendant has adopted a new construction of an old rule that departs radically from its own prior longstanding policy without invoking the notice-and-comment process. *See Jean*, 711 F.2d at 1476; *see also National Family Planning & Reprod. Health Ass'n v. Sullivan*, 979 F.2d 227, 241 (D.C.Cir.1992). Moreover, even assuming that the July 19 Memorandum constituted an interpretation of the underlying statute and regulation, the geographic-proximity requirement in the memorandum is unconstitutionally vague as applied. Where an agency's interpretation of a regulation is unconstitutionally vague as applied, the court may refuse to accept the agency's interpretation. *See Georgia Pacific Corp. v. OSHRC*, 25 F.3d 999, 1004 (11th Cir.1994). "A statute or regulation is considered unconstitutionally vague under the due process clause of the Fifth or Fourteenth Amendments if it 'forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* at 1005 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)).

Here, no evidence has been presented setting forth with any precision how close a hospital should be to a SNF to make the transfer of patients feasible. Plaintiffs have presented substantial evidence illustrating various incidents where the medical intermediaries have invalidated transfer agreements based on the distance between the SNF and the hospital. A review of these incidents clearly reveals that no individual of common intelligence could determine with any degree of certainty whether a particular distance is permissible. In the August 9, 1995, letter, the HCFA stated that "[w]here a [SNF] is located many miles from the hospital and where there are a number of equally qualified hospitals closer to the [SNF], a transfer agreement between the two would be valid only under very unusual circumstances." While purportedly giving some guidance as to the distance requirement, this letter fails to set forth any settled definition for the term "equally qualified hospital" or to delineate any factors in determining what constitutes "very unusual circumstances." Accordingly, the July 19 Memorandum is unconstitutionally vague as applied.

Finally, the Court concludes that the July 19 Memorandum is unreasonable, arbitrary, and capricious. As discussed above, neither the statute nor the accompanying regulation set forth a geographic proximity requirement with respect to hospitals and SNFs operating under a written transfer agreement. The undisputed evidence establishes that hospitals are allowed under the Medicare guidelines to perform the respiratory therapy on the premises of the SNF. In fact, that is how Plaintiff provides the services. Thus, the distance between the hospital and the SNF is irrelevant because SNF residents are not transported to the hospital to receive the therapy. The undisputed evidence also establishes that the hospitals are reimbursed a standard travel allowance that does not vary based on the distance between the SNF and the hospital.

More importantly, there has been no evidence presented that this practice has resulted in harm to Medicare patients. Indeed, the only evidence presented is that use of the Plaintiffs' respiratory therapists in the SNFs *improves* the quality of care provided to the nursing home residents. The Plaintiffs have submitted substantial, unrefuted evidence as to the ongoing injury to their business and the prospects of future business. Continued enforcement of the Secretary's interpretation of the statute and regulations will in all likelihood destroy the Plaintiffs' business of providing valuable, off-site respiratory therapy services to SNF residents. Accordingly, the July 19 Memorandum is unreasonable, arbitrary, and capricious.

## IV. SUMMARY

For the foregoing reasons, the Court concludes that the geographic-proximity requirement in the July 19 Memorandum constitutes unlawful rule-making, and is unreasonable, arbitrary, capricious, and unconstitutionally vague. The Defendant's Motion for Summary Judgment [Doc. No. 12] therefore is DENIED, and the Plaintiff's Cross–Motion for Summary Judgment [Doc. No. 13] is GRANTED. Accordingly, the Defendant, and any of her agents, servants, or employees, and all persons acting on behalf of or in concert or participation with her, including the officers, agents, and employees of HCFA are hereby permanently enjoined and restrained from enforcing the geographic-proximity requirement contained in the July 19 Memorandum. Specifically, the Defendant and her representatives stated above are permanently enjoined and restrained from:

(a) denying payment to SNFs for respiratory therapy services provided under arrangement with a hospital under 42 U.S.C. § 1395(h)(6), with which the Plaintiffs have or have had contractual arrangements, where a transfer agreement is in writing and satisfies clauses (1) and (2) of the first paragraph of § 1395x(*l*), irrespective of the distance between the SNF and the hospital;

(b) denying coverage to residents of SNFs for respiratory therapy services provided under arrangement with a hospital under 42 U.S.C. § 1395(h)(6), with which the Plaintiffs have had contractual arrangements, where a transfer agreement is in writing and satisfies clauses (1) and (2) of the first paragraph of § 1395x(*l*), irrespective of the

distance between the SNF and the hospital;

(c) declaring invalid for purposes of respiratory therapy coverage any transfer agreement, between hospitals and SNFs with which the Plaintiffs have or have had contractual arrangements, which is in writing and satisfies clauses (1) and (2) of the first paragraph of § 1395x(l), irrespective of the distance between the parties to such agreement.

While the issuance of the permanent injunction is to take effect on the entry date of this Order, the Defendant remains free to issue a new rule regarding transfer agreements that fully complies with the APA and the due process clause of the Fifth and Fourteenth Amendment.