**GRANCARE, INC. and Regency Health Services, Inc. Plaintiffs,**

v.

**Donna SHALALA, Secretary, Department of Health and Human Services Defendant.**

**No. 98–1971 (TFH).**

United States District Court, District of Columbia.

March 28, 2000.

Ronald Sutter, Christopher L. Keough, Powers, Pyles, Sutter & Verville, P.C., Washington, DC, for Plaintiff Grancare.

Sonia Orfield, Dept of Health & Human Serv., Washington, DC, for Defendant Shalala.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

This case involves plaintiffs' challenge to the Secretary's disallowance of Medicare reimbursements for costs incurred by thirteen Skilled Nursing Facilities to provide occupational therapy and speech therapy services to patients under arrangements with outside contractors in 1994. Currently pending before the Court are the parties' cross-motions for summary judgment. Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This case is proper for summary judgment as it does not present

any disputed issues of material fact. After holding a hearing on these motions and carefully considering the parties' briefs, the court grants plaintiffs' motion for summary judgment and denies defendant's motion for summary judgment.

## I. BACKGROUND

### A. Statutory and Regulatory Background

Title XVIII of the Social Security Act ("the Medicare program"), 42 U.S.C. §§ 1395 et seq., establishes a program of medical insurance for the aged and disabled. The Medicare program consists of two parts: Part A and Part B. Part A provides for inpatient care, including speech therapy ("ST") and occupational therapy ("OT"), by a Skilled Nursing Facility ("SNF") if it is prescribed by a physician. See 42 U.S.C. §§ 1395c, 1395d (a) (2), 1395i–3(b)(2), 1395x (h). Part B provides supplemental medical insurance to cover OT and ST therapy on an outpatient basis also pursuant to a prescription by a physician. See 42 U.S.C. §§ 1395j, 1395k (a)(2)(c), 1395x (g) & (p). After the close of each fiscal year, each provider files a cost report with its Medicare fiscal intermediary ("intermediary"), which audits the cost report and issues a final determination of the provider's reasonable costs of services furnished to medicare beneficiaries in a notice of program reimbursement. See 42 U.S.C. §§ 1395h, 1395oo(a)(1)(A)(i); 42 C.F.R. §§ 413.20, 405.1803(a)(1) (1997). Providers are then reimbursed for the reasonable cost of their services, provided they are medically necessary. See 42 U.S.C. §§ 1395d, 1395i, 1395x. There is no allegation that the services in this case were not medically necessary.

The reasonable cost of a service is defined by statute as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." 42 U.S.C. § 1395x(v)(1)(A). The statute further provides that reasonable cost "shall be determined in accor-

dance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs...." Id.

The Secretary has issued several regulations, pursuant to the Medicare statutes that are at issue in this case. They read, in pertinent part, as follows:

> The costs of providers' services vary from one provider to another and the variations generally reflect differences in scope of services and intensity of care. The provision in Medicare for payment of reasonable cost of services is intended to meet the actual costs, however widely they may vary from one institution to another. This is subject to a limitation if a particular institution's costs are found to be *substantially out of line* with other institutions in the same area that are similar in size, scope of services, utilization, and other relevant factors.

42 C.F.R. § 413.9(c)(2) (1993) (emphasis added). See also 42 C.F.R. § 413.9 (1992) (same text).

> Limitations on reimbursable costs [Cost Limits] (a) Introduction.(1) Scope. This section implements 1861(v)(1)(A) of the Act, by setting forth the general rules under which HCFA [the Health Care Financing Administration, an entity with authority to act on behalf of the Secretary of Health and Human Services] may establish *limits on provider costs* recognized as reasonable in determining Medicare program payments ... (2) General principle. Reimbursable provider costs may not exceed the costs estimated by HCFA to be necessary for the efficient delivery of needed health services.

42 C.F.R. § 413.30 (1993) (emphasis added). See also 42 C.F.R. § 413.30 (1992) (same text).

> Reasonable cost of physical and other therapy services furnished under arrangements. (a) Principle. The reasonable cost of the services of physical, occupational, speech and other thera-

pists ... furnished under arrangements ... with a provider ... may not exceed an amount equivalent to the prevailing salary and additional costs that would reasonably have been incurred by the provider or other organization had such services been performed by such person in an employment relationship, plus the cost of other reasonable expenses incurred by such person in furnishing services under such an arrangement ... (c)(5) These provisions are applicable to individual therapy services or disciplines by means of separate guidelines by geographical area and apply to costs incurred after issuance of the guidelines but no earlier than the beginning of the provider's cost reporting period described in paragraph (a) of this section. Until a guideline is issued for a specific therapy or discipline, costs are evaluated so that such costs do not exceed what a *prudent and cost-conscious buyer* would pay for the given service, ....

42 C.F.R. § 413.106 (1993) (emphasis added). *See also* 42 C.F.R. § 413.106 (1992) (same text).

This case also involves two sections of the Secretary's Medicare Provider Reimbursement Manual ("PRM"). These provisions read, in pertinent part, as follows:

*Reasonable Costs*—Reasonable costs of services are determined in accordance with regulations establishing the method or methods to be used, and the items to be included.... Costs may vary from one institution to another because of the scope of services, level of care, geographic location, and utilization. It is the intent of the program that providers are reimbursed the actual costs of providing health quality care, regardless of how widely they may vary from provider to provider, except where a particular institution's costs are found to be *substantially out of line* with other institutions in the same area which are similar in size, scope of services, utilization, and other relevant factors.... Implicit in the intention that actual costs be paid to

the extent they are reasonable is the expectation that the provider seeks to minimize its costs and that its actual costs do not exceed what a *prudent and cost conscious buyer* pays for a given service. (See § 2103). If costs are determined to exceed the level that such buyers incur, in the absence of clear evidence that the higher costs were unavoidable, the excess costs are not reimbursable under the program.

PRM § 2102.1 (emphasis added).

The *prudent and cost conscious buyer* not only refuses to pay more than the going price for an item or service, he/she seeks to economize by minimizing cost.

PRM § 2103 (emphasis added).

## B. Factual Background

Plaintiffs operate a group of thirteen SNF's in the State of California that provide OT and ST services to Medicare patients by contracting with outside service providers. The reimbursements at issue in this case are for costs incurred in 1994.

In 1996, in response to rising costs of OT and ST services, the intermediary conducted a survey and used the results to establish prevailing salary rates specific to geographic regions for OT and ST services. This national survey asked providers to report the salaries of full-time therapists they employed or the costs (by unit of service or hour) they incurred of contracting these services to outside therapy providers. Of the 1,146 responses received, 1,092 were deemed usable and these were separated into five geographic regions. Relevant to this case, the intermediary estimated the annual salary rates in the pertinent region of California and Utah based on the 75th percentile of the reported salaries or per hour costs paid by respondents in that region. The figure was then adjusted by the 61.8 percent fringe benefit and expense factor that the Secretary had adopted in 1983 in connection with the establishment of salary equivalency limits for physical therapy ser-

vices.[1] The Secretary maintains that the intermediary used these cost estimates as "benchmarks" to apply in its prudent buyer analysis.

As was customary, at the end of fiscal year 1994, the SNF's submitted cost reports to the intermediary, a body that performs fiscal auditing for the Secretary. Noting that plaintiffs had not attempted to minimize costs by hiring full-time, salaried therapists, the intermediary requested documentation that the SNF's had otherwise acted as a "prudent buyer." When no documentation was submitted, the intermediary found that the SNF's had exceeded the costs that they would have incurred had they hired a full-time therapist and reduced the reimbursable amount to the 75th percentile of the benchmark costs determined by the 1996 survey, plus a fringe benefit and expense factor of 61.8 percent. Notably, the intermediary acknowledged that the SNF's costs (of $100 per hour) were not out of line with those incurred by similar providers.

The plaintiffs appealed the decision of the intermediary to the Provider Reimbursement Review Board ("PRRB"), which reversed the intermediary's disallowances. The Board found that the intermediary did not show that the employment of salaried therapists was less expensive than contracting out for the therapy services and that it erroneously based its disallowance on estimates of salaried therapists that included no time off for vacation or sick or personal leave.

The Deputy Administrator, acting as a delegate of the Secretary, reversed the PRRB decision and reinstated the intermediary's disallowances. The Secretary found that the intermediary's application of the prudent buyer standard was not a retroactive application of the salary equivalency limits and that under the prudent buyer standard the intermediary may disallow providers costs even if they are not substantially out of line.

## C. The Parties' Contentions

First, plaintiffs argue that the Secretary's decision must be reversed because it enforced the retroactive application of salary equivalency guidelines. Second, plaintiffs argue that even if the intermediary did not retroactively apply salary equivalency guidelines, the benchmarks used by the intermediary were unlawful because they relied on false assumptions and a flawed survey which did not compare similar services in the same geographic area. Third, plaintiffs argue that the Secretary's decision was arbitrary and capricious because it did not adhere to the definition of "reasonable costs" in the Medicare statute and the implementing regulations. Specifically, plaintiffs take issue with the agency's attempts to distinguish between the prudent buyer and substantially out of line tests. Plaintiffs maintain that the applicable standard is the substantially out of line test, and they devote much time to attacking the validity of the prudent buyer test as an alternative method of disallowing costs. Finally, plaintiffs state that the Secretary's decision was not supported by substantial evidence, because the costs incurred by plaintiffs were not substantially out of line with the costs incurred by any SNF in California that furnished therapy services to patients through full-time employment of in-house therapists.[2]

On the other hand, defendant maintains that the intermediary applied benchmarks derived from informal survey data rather than formal salary equivalency guidelines.

1. Salary equivalency guidelines for OT and ST services were not promulgated by the Secretary until 1998. *See* 63 Fed.Reg. 5106 (1998).

2. Plaintiffs also make an argument that they were subject to "selective enforcement" of the intermediary's limits because high volume providers suffered more disallowances than low volume providers. The Court finds that this argument lacks merit. In fact, plaintiffs concede this argument in their briefs when they cite the benchmarks' general application as a reason to deem it a salary equivalency guideline. Therefore, this Court will not further address this argument.

Defendant also disputes plaintiffs' contention that there was any retroactive application of the benchmarks. Defendant further contends that the survey data was scientifically gathered and calculated and that the resulting benchmarks accurately reflect costs of comparable services and are not the product of faulty assumptions. Finally, defendant argues that the intermediary, as upheld by the Secretary through her Deputy Administrator, properly applied the prudent buyer standard.

## II. DISCUSSION

■ Both parties agree that 42 U.S.C. § 1395oo(f)(1) provides jurisdiction for this court to review final agency decisions concerning Medicare provider reimbursement disputes pursuant to the applicable provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Under the APA, the "standard of review is a highly deferential one, which presumes the agency's action to be valid." *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C.Cir.1981) (citations omitted). Nevertheless, the court must ensure that "the agency action was 'based on a consideration of the relevant factors,' and that 'the agency has exercised a reasoned discretion, with reasons that do not deviate from or ignore the ascertainable legislative intent.' Our inquiry into the facts must also be searching and careful." *Costle*, 657 F.2d at 283 (citations omitted). The parties agree that the APA standard of review only permits a court to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–15, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); 5 U.S.C. § 706.

■ Therefore, this Court must determine whether the Secretary, via her representatives, exercised reasonable decision making, whether she considered the relevant factors, and whether the facts have some basis in the record. *National*

*Treasury Employees Union v. Horner*, 854 F.2d 490, 498 (D.C.Cir.1988). Moreover, the Court must limit its review under the APA to the administrative record before the agency at the time of the Deputy Administrator's decision. *See Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *see also Memorial Hospital/Adair County Health Ctr., Inc. v. Bowen*, 829 F.2d 111 (D.C.Cir.1987). Applying these principles of law to the present dispute, this Court must consider plaintiffs' claim that the Secretary, through the Deputy Administrator, acted arbitrarily and capriciously in upholding the fiscal intermediary's disallowance of certain of plaintiffs' OT and ST costs.

### A. The Benchmarks Were Not Retroactive Salary Equivalency Limits

The Court must first consider whether the "benchmarks" applied to the plaintiffs' OT and ST costs constituted retroactive cost limits in violation of *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). Plaintiffs contend that the market rates are retroactive cost limits because the Secretary set the limits after plaintiffs incurred the OT and ST costs and because the limits presumptively render the incurred costs noncompensable. Defendant argues that the Medicare program is inherently backward-looking because it requires the Secretary's representatives to review the appropriateness of costs after they are incurred. Defendant also maintains that the benchmarks used to determine market rates were not cost limits because they were not conclusive and were only used as a guide in determining the appropriate level of reimbursement.

In *Bowen*, the Secretary of Health and Human Services ("HHS") reissued a cost-limit schedule for 1981 during the 1984 calendar year. *See* 488 U.S. at 206, 109 S.Ct. 468. The Secretary's issuance retroactively disqualified the plaintiff hospitals' reimbursement of certain expenses. *See id.* The Supreme Court as an initial mat-

ter found that Congress had granted the Secretary of HHS the authority to establish limits on costs reimbursed under the Medicare program. *See id.* However, the main issue facing the Court was whether this rulemaking authority included the power to promulgate retroactive cost limits. *Id.* The Court held that as a general matter, statutory grants of rulemaking authority will not be understood to encompass the power to promulgate retroactive rules unless the statute conveys the power by express terms. *Id.* at 208. Accordingly, the Court invalidated the retroactive cost limits. *See id.* at 215–16, 109 S.Ct. 468. In rejecting the government's arguments, the Court considered whether the "retroactive corrective adjustments" authorized by Section 1395x(v)(1)(A) supported the Secretary's action. *See id.* The Court found that the structure and language of the statute require the conclusion that the retroactivity provision applies only to rulemaking, not to case-by-case adjudication. *Id.*

■ In the instant case, the cost limit issue is a close question. However, after carefully considering the arguments presented by both sides, the Court finds that the benchmarks applied by the intermediary are not identical to the salary equivalency guidelines and are thus not the retroactive cost limits prohibited by *Bowen.* Plaintiffs essentially argue that since the benchmarks were determined in a manner quite similar to the process used to tabulate salary equivalency guidelines, the two limits are identical. While the Court agrees that the salary data used in these two processes were calculated through similar methods, the Court cannot agree that the two limits are identical because there are crucial differences in the way in which these estimates were used.

The intermediary used the benchmark amounts to determine which providers' therapy purchasing practices warranted further investigation. Therefore, the benchmark comparison became the beginning of a conversation between the inter-

mediary and the provider for the purposes of determining whether the provider had made explicit efforts to economize. Administrative Record ("A.R.") at 467–68. Where a provider's costs compared unfavorably to the benchmark amount, a provider's reimbursement still would not be reduced where it could demonstrate that it had attempted to minimize costs by hiring therapists. *Id.* at 468, 473. On the other hand, if the intermediary had applied salary equivalency guidelines, the guideline would have served as a firm cap on the providers' costs. A provider could escape application of a limit imposed by a guideline only by demonstrating, in a trial-like proceeding, the existence of unusual circumstances that. resulted in an efficient provider incurring costs above the standard payment · rate. 42 C.F.R. § 413.106(f); *see* 42 C.F.R. §§ 405.1809–405.1831. Thus, the benchmarks are inherently more flexible than salary equivalency guidelines and are used more informally, merely to initiate the discussion between the intermediary and the provider when costs exceed market rates. The Court considers this a significant difference that distinguishes this procedure from the type of conclusive retroactive cost limits found invalid in *Bowen.* It places the procedure employed by the Secretary into the sphere of case-by-case adjudication and distinguishes it from the uniform cost limit procedure invalidated in *Bowen.* Here, the benchmarks were only used as a guide to providers in focusing on what it perceived to be excessive reimbursement requests.

**B. The Deputy Administrator Improperly Applied the Prudent Buyer · Concept**

The Court must next consider whether the Deputy Administrator's decision properly relied upon 42 C.F.R. § 413.106(c)(5), the prudent buyer concept, and 42 C.F.R. § 413.9(c)(2), the substantially out of line provision, in reaching a determination of reasonable cost. Plaintiffs contend that the substantially out of line provision in-

corporates the prudent buyer test and that the two cannot be independently applied by the agency to limit Medicare reimbursement. Plaintiffs also criticize the agency's reliance on Sections 2102.1 and 2103 of the PRM, which contain the agency's interpretation of the prudent buyer test. Defendant contends that both tests represent a viable option for the Secretary to limit Medicare reimbursements of actual cost to reasonable levels.

After carefully reviewing the applicable statutes and regulations, the parties' memoranda, and the oral arguments presented at the March 14, 2000 hearing, the Court finds that the Deputy Administrator's application of the prudent buyer principle was improper.

1. *Plaintiffs Lacked Fair Notice of the Secretary's Interpretation of the Prudent Buyer Principle*

Defendant argues that her interpretation of 42 C.F.R. § 413.106(c)(5) in the "prudent buyer" provisions of PRM §§ 2102.1 and 2103, Defs. Mem. at 7, 20, 30, comprises a "distinct strand [ ] of the reasonable cost analysis" that permits the disallowance of actual costs that are not in excess of the "going rate" and are not substantially out of line with comparable costs incurred by comparable providers for comparable services. Defs. Mem. at 24. However, this construction of PRM §§ 2102.1 and 2103 is not an obvious or anticipated reading of 42 C.F.R. § 413.9.

The regulation provides for payment of actual costs incurred by a provider, unless the provider's costs are found to be substantially out of line. 42 C.F.R. § 413.9(c)(2); *Home Health Servs. of Greater Philadelphia, Inc. v. Harris*, 530 F.Supp. 1236, 1248 (E.D.Pa.1982) (ruling that the use of a "benchmark or fixed criterion for reasonable cost" is an "arbitrary declaration" that is "contrary to the flexibility of the concept of reasonable cost inherent in [42 C.F.R. § 413.9(c)(2) ]"). As construed by the Deputy Administrator, PRM §§ 2102.1 and 2103 eliminate the Secretary's burden to show that a provider's costs are substantially out of line with comparable costs incurred by comparable providers for comparable services. A.R. at 14–15; *cf. Memorial Hosp./Adair Cty.*, 829 F.2d at 118.

Defendant's position is not consistent with the description of the "prudent buyer" principle in the PRM. The "Application of Prudent Buyer Principle" described in PRM § 2103.B does not provide that intermediaries may disallow costs that are in line with the going rate if a provider does not document attempts to hire in-house therapists. Rather, it states only that intermediaries may disallow costs in cases where a provider pays more than the going rate or does not take advantage of savings available under warranties. PRM § 2103.B. Thus. Defendant's interpretation of 42 C.F.R. § 413.106(c)(5) in the prudent buyer provisions of the PRM "could not have fairly informed [Plaintiffs] of the agency's perspective." *General Electric Co. v. United States Environmental Protection Agency*, 53 F.3d 1324, 1330 (D.C.Cir.1995) (holding that an agency's interpretation is entitled to deference, "but if it wishes to use that interpretation to cut off a party's right, it must give full notice of its interpretation.")

Moreover, defendant's interpretation of the Medicare reasonable cost regulations in this case conflicts with her prior applications of the Medicare reasonable cost regulations generally and 42 C.F.R. § 413.106 specifically. In the past, it has been the Secretary's position that 42 C.F.R. § 413.106(c)(5) and the prudent buyer provisions in the PRM are coterminous with the provision for payment of actual costs except to the extent that a provider's costs are shown to be substantially out of line under 42 C.F.R. § 413.9(c)(2).

The "prudent buyer" provisions in PRM §§ 2102.1 and 2103 were published in 1971 as an amplification of the provision for payment of actual costs, except to the extent that a provider's costs are substantial-

ly out of line, under the reasonable cost standard in 42 U.S.C. § 1395x(v)(1)(A) and the implementing regulation now codified at 42 C.F.R. § 413.9. *See* PRM Revision 44 (Nov.1971) (Plaintiff's Exhibit 4). The "prudent buyer" principle was described by the Secretary, at that time, as "implicit in" the provisions for payment of actual costs except to the extent that they are substantially out of line. *Id.* at § 2102.1.

Furthermore, shortly after the adoption of § 413.106(c)(5) in 1975,[3] the Secretary affirmed that in the absence of specific guidelines for a particular type of cost, such as the salary equivalency limits established for physical therapy costs in 1975, "the incurred amounts of such costs are considered reasonable, unless they are shown to be substantially out of line with those incurred by comparable providers" under the regulation now codified at 42 C.F.R. § 413.9(c)(2) (formerly designated as § 413.451(c)(2)). Part A Intermediary Letter 78–16, [1978 Transfer Binder] *Medicare & Medicaid Guide* (CCH) ¶ 28,-971 at 9691 (Apr.1978) (A.R. at 1154).

In addition, the Secretary has previously consented to the reversal of disallowances of contract therapy costs, for which salary equivalency limits had not been established, unless the costs were shown to be substantially out of line. In 1983, for example, the PRRB reversed disallowances of costs incurred for contract respiratory therapy services, for which salary equivalency guidelines had not been published, which were based on a survey of the costs incurred for respiratory therapy services furnished by employees of other institutions in the provider's area. *Saddleback Community Hosp. v. Blue Cross and Blue Shield Ass'n/Blue Cross of California*, [1983–1 Transfer Binder] *Medicare & Medicaid Guide* (CCH) ¶ 32,352 (PRRB 1982) (A.R. at 1212–14). The Board reversed because the provider's contract therapy costs were not shown to be sub-

stantially out of line under the regulations now codified as 42 C.F.R. § 413.9(c)(2). *Id.* at 9786 (A.R. at 1214). The PRRB's decision was not reversed or modified by the Secretary, and therefore, was the "final" decision of the Secretary in that case. 42 U.S.C. § 1395oo(f).

More recently, the Secretary confirmed that the "prudent buyer" principle does not establish a standard inconsistent with the substantially out of line limitation in 42 C.F.R. § 413.9(c)(2). In 1995, the Deputy Director of the Secretary's Bureau of Policy Development distributed a memorandum, stating:

> Regulations at 42 C.F.R. § 413.9 provide that while Medicare payment based on a provider's reasonable costs is intended to meet the costs actually incurred, a limit applies where a particular institution's costs are found to be substantially out of line with other institutions in the same area which are similar in size, scope of services, utilization, and other relevant factors, or the costs are otherwise not reasonable. *This limitation has been interpreted in various program manuals and instructions as a "prudent buyer" concept.*

A.R. at 1245 (emphasis added). Subsequently, in a notice of proposed rulemaking for the adoption of final salary equivalency limits for OT and ST services, the Secretary again noted that costs incurred for OT and ST services obtained from outside contractors prior to the adoption of final salary equivalency limits for those services is "subject to the test of reasonableness as required by regulations at 42 C.F.R. § 413.9." 62 Fed Reg. 14,851, 14,-854 (Mar. 28, 1997) (A.R. at 1336).

Considering the history of the reasonable cost regulations and the precedent established by the Secretary herself, the Court agrees with plaintiffs that they were not given fair notice of the defendant's

---

**3.** 40 Fed.Reg. 5760, 5761–62 (Feb. 7, 1975) (codified at that time as 20 C.F.R. § 405.432)

(A.R. at 350–51).

interpretation of the prudent buyer principle in this case. Defendant's arguments to the contrary are unconvincing. In the only reported case in which the Secretary's guidelines were applied to disallow a provider's physical therapy costs, the intermediary also performed a study to show that the provider's costs were substantially out of line with costs incurred by comparable providers in the same area for similar services. *See Lawrenceville Nursing Home, Inc. v. Prudential Life Ins. Co. of America,* PRRB Hearing Dec. No. 76–D50 (July 23, 1976) (plaintiffs' exhibit 6), *reprinted in* [1976 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 28,052. This decision is consistent with plaintiffs' interpretation of the reasonable cost provisions, because it disallowed costs only after they were shown to be substantially out of line.

Defendant's reliance on the unpublished 1979 decision of the Court of Claims in *Lincoln Park Nursing Home v. United States,* 1979 WL 30868 (Ct.Cl.1979), is also unavailing. The sole issue before the court in *Lincoln Park* was whether a disallowance of therapy costs violated the due process clause of the Fifth Amendment. 1979 WL 30868 at *5. There is no indication in the court's opinion that the provider showed or even argued that its costs were not substantially out of line as defined in 42 C.F.R. § 413.9(c)(2). The court's opinion notes that the provider failed to present evidence showing that the Secretary's decision was inconsistent with costs incurred for similar services by comparable providers in the same area and, therefore, the court could not "now say that it would or should have made a difference." *Id.* Apparently, it would have made a difference, because the Court of Claims later reversed a disallowance of contract therapy costs not shown to be substantially out of line with costs incurred for similar services by comparable providers in the same area. *See Sacred Heart Hosp. v. United States,* 222 Ct.Cl. 387, 616 F.2d 477, 483–84 (1980).

The Court is equally unconvinced by defendant's citation to the 1982 decision of the United States District Court for the Northern District of New Jersey in *New Jersey Speech–Language–Hearing Ass'n v. Prudential Ins. Co. of America,* 551 F.Supp. 1024, 1027 (D.N.J.1982). That case was dismissed for lack of standing and jurisdiction; therefore, the court never had opportunity to reach the merits of the dispute. Defendant's citation to two sentences in the background discussion of that decision were merely dicta and are not binding on this Court.

As construed by defendant in this case, the prudent buyer manual provisions permit the disallowance of costs that are not substantially out of line or in excess of the "going rate." Defs. Mem. at 24. This interpretation of the reasonable cost provisions is clearly inconsistent with the Secretary's prior interpretations of, and precedents established under, those regulations. Plaintiffs, therefore, should not be subjected to financial penalties under defendant's interpretation of the "prudent buyer" principle in this case. If the Secretary wishes to adopt the Deputy Administrator's interpretation of PRM §§ 2102.1 and 2103, she must do so in accordance with the notice and comment rulemaking procedures mandated by 5 U.S.C. § 553. At this point, however, the Secretary's application of the "prudent buyer" principle to allow disallowances of costs not found to be substantially out of line is unsustainable. *See National Family Planning & Reproductive Health Ass'n v. Sullivan,* 979 F.2d 227, 240–41 (D.C.Cir.1992); *Vencor, Inc. v. Shalala,* 988 F.Supp. 1467, 1472 (N.D.Ga. 1997) (holding that a proximity requirement established in a HCFA memorandum is invalid under the APA because it is inconsistent with the governing provisions of the statute and regulations and departed from long-standing policy); *Linoz v. Heckler,* 800 F.2d 871, 877–78 (9th Cir. 1986) (holding that a Medicare manual provision is invalid because it is inconsistent with the governing regulation and was not

adopted in accordance with the APA); *Duggan v. Bowen*, 691 F.Supp. 1487, 1514 n. 44 (D.D.C.1988) (noting that a policy adopted in a letter from a HCFA official to its fiscal intermediaries is invalid under the APA because it has the effect of creating new law).

### 2. The Deputy Administrator's Interpretation of PRM §§ 2102.1 and 2103 Is Contrary To Binding Precedent

■ Defendant's assertion that PRM §§ 2102.1 and 2103 may properly be construed to permit the disallowance of costs that are not substantially out of line with comparable costs incurred by comparable providers for comparable services was squarely rejected by the D.C. Circuit in *Memorial Hospital/Adair County*, 829 F.2d at 117–19.

In *Memorial Hospital*, the PRRB upheld disallowances of costs incurred by a hospital for contract pharmacy services based, in part, upon its finding that the hospital "did not meet the test of a prudent buyer [under] PRM Sec. 2103." The Board reached this conclusion because the hospital did not "consider alternatives such as ... the feasibility of providing in-house services ... [,] solicit bids ... or otherwise search the marketplace." *Memorial Hosp. v. Blue Cross/Blue Shield Ass'n/ Blue Cross/Blue Shield of Oklahoma*, [1984–2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 34,140 at 10,113 (1984) (Plaintiff's Exhibit 3). The district court, after first ruling that the disallowances were consistent with the substantially out of line limitation in 42 C.F.R. § 413.9(c)(2), affirmed the PRRB's finding that the hospital "had been an 'imprudent buyer' of pharmacy services." *Id.* at 438–40. The district court concluded that the facts relied upon by the PRRB in support of its findings that the hospital was not a

prudent buyer were "sufficient in themselves to constitute substantial evidence in support of the Secretary's determination." *Id.* at 440.

The Court of Appeals reversed, because the Secretary had not shown that the hospital's contract pharmacy costs were substantially out of line with truly comparable costs incurred for truly comparable services by comparable providers as required by 42 C.F.R. § 413.9. *Memorial Hospital/Adair County*, 829 F.2d at 117–19. Therefore, the D.C. Circuit has clearly rejected defendant's argument that the "prudent buyer" principle permits the disallowance of costs that are not substantially out of line. Otherwise, having concluded that defendant had not shown that Memorial's pharmacy costs were substantially out of line, the court would have then had to address the second issue in the case—the Secretary's ruling that the hospital was not a "prudent buyer" because it did not consider alternatives such as hiring in-house. Thus, the Court of Appeals in *Memorial Hospital/Adair County* rejected the same argument that the Secretary presents in this case. Therefore, to the extent that plaintiffs' costs are not substantially out of line with those incurred by similar providers of comparable services in the same area, those costs must be reimbursed.[4]

### III. CONCLUSION

For the foregoing reasons, this Court grants plaintiffs' motion for summary judgment and denies the defendant's cross-motion for summary judgment. An order will accompany this opinion.

---

4. The Court's resolution of the above issues renders it unnecessary for the Court to address plaintiffs' arguments that in determining the benchmarks the intermediary relied upon improper assumptions and a flawed survey. There is no evidence before this Court that plaintiffs' costs were found to be substantially out of line under the benchmarks applied in this case.